IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BARRY A. BENNETT,

              Plaintiff,

vs.                                Case No. 14-2505-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

              Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 5, 2012, administrative law judge (ALJ) Deborah J. Van Vleck issued her decision finding that plaintiff was not disabled (R. at 122-131). On November 9, 2012, the Appeals Council issued its first decision, remanding the case back to the ALJ for further hearing (R. at 137-139). On September 3,

2013, ALJ MaryAnn Lunderman issued a second decision, again finding plaintiff not disabled (R. at 26-45).  On August 21, 2014, the Appeals Council denied plaintiff's request for review of the ALJ decision (R. at 6-7).  Thus, the decision by ALJ MaryAnn Lunderman is the final decision of the Commissioner.

Plaintiff alleges that he had been disabled since January 1, 2009 (R. at 26).  Plaintiff meets the insured status requirements for social security disability benefits through June 30, 2014 (R. at 29).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 29).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 29).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 30).  After determining plaintiff's RFC (R. at 32), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 43).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 44).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 45).

**III.  Did the ALJ err in finding that plaintiff could perform work as a folding machine operator, a collator operator, and a bottling attendant?**

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved.  2000 WL 1898704 at *1.  In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work.  Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled.  At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency.  If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information.  2000 WL 1898704 at *2; Haddock v. Apfel, 196 F.3d

1084, 1091 (10th Cir. 1999)(we hold that the ALJ must investigate and elicit a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability).

In her RFC findings, the ALJ included in her limitations that plaintiff could not engage in "frequent repetitive activity with his left upper extremity" and "cannot perform work at a production pace, such as on an assembly line" (R. at 32).[1]  Based on these limitations, the vocational expert (VE) testified that plaintiff could perform work as a folding machine operator, a collator operator, and a bottling attendant (R. at 64-65).  The VE further testified that the jobs he identified were consistent with the DOT, although noting that the DOT did not specifically address overhead reaching (R. at 65).  Based on the VE testimony, the ALJ found that plaintiff could perform the 3 jobs identified by the VE (R. at 44).

The job of a folding machine operator requires the ability to reach frequently, handle frequently and finger occasionally. DOT (Dictionary of Occupational Titles) 208.685-014, 1991 WL 671754.  The job of a collator operator requires the ability to reach, handle and finger frequently.  DOT 208.685-010, 1991 WL 761753.  The job of bottling-line attendant also requires the

---

[1] Plaintiff testified that he is right-handed; thus plaintiff's left hand is his non-dominant hand (R. at 56).

ability to reach, handle and finger frequently. DOT 920.687-042, 1991 WL 687971. Plaintiff argues that these job requirements conflict with the DOT, and the ALJ erred by failing to elicit a reasonable explanation for the conflict.

In the case of Segovia v. Astrue, 226 Fed. Appx. 801, 804 (10th Cir. March 23, 2007), the court held as follows:

> Both the ticket-taker and cafeteria-attendant positions require..."frequent" reaching, see SCO §§ 09.05.02, 09.05.08; Aplt.App. at 439, 446, while Ms. Segovia is limited to occasional overhead reaching. For purposes of the SCO, however, "reaching" is defined as "[e]xtending hand(s) and arm(s) in any direction." SCO at C-3 (emphasis added). **The SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's specifications. Aplt.App. at 391-92, 395. In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case.** See Carey v. Apfel, 230 F.3d 131, 146 (5th Cir.2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, ... the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.... [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation."). Further, the DOT descriptions for cafeteria attendant and ticket taker do

> not indicate that these jobs predominantly
> involve overhead reaching rather than other
> types of reaching. See DOT §§ 311.677-010,
> 344.667-010; Aplt.App. at 437, 445.

(emphasis added).

In the case of Williams v. Astrue, Case No. 09-1341-SAC (D. Kan. Oct. 26, 2010), plaintiff was limited to work that did not require significant use of the non-dominant left upper extremity (Doc. 19 at 19). The four jobs identified by the VE and the ALJ as jobs that plaintiff could perform in that case required the frequent ability to reach, handle and finger. The court held as follows:

> The DOT and the SCO do not separately
> classify reaching, handling or fingering
> with one hand, or both hands, or the
> dominant or non-dominant hand. Thus, under
> the SCO, a job requiring frequent reaching,
> handling and fingering does not necessarily
> require that a claimant be able to
> frequently reach, handle and/or finger with
> both hands or with the non-dominant hand.
> As was the case in Segovia, the VE was aware
> of plaintiff's limitation with the non-
> dominant left hand, and he testified that
> plaintiff could perform the jobs he
> identified and that his opinion was
> consistent with the DOT [citations to record
> omitted]. The court finds that in these
> circumstances, the VE's testimony does not
> conflict with the DOT and SCO so much as it
> clarifies how their broad categorizations
> apply to this specific case. The court
> finds no clear error by the ALJ in his
> findings at step five.

Williams v. Astrue, Case No. 09-1341-SAC (D. Kan. Oct. 26, 2010; Doc. 19 at 20-21). See Mitton v. Colvin, 2015 WL 8780537

at *11-12 (D. N.J. Dec. 15, 2015)(the court found no conflict with the VE testimony and the DOT when claimant limited to occasional fingering and handling with non-dominant hand and the VE identified jobs which required frequent fingering and handling; the court noted that the DOT does not require full bilateral dexterity to satisfy handling and fingering requirement); Gholston v. Colvin, 2015 WL 6167824 at *22 (D. Iowa Oct. 21, 2015)(VE testified that claimant with full functional capabilities in dominant arm and a limitation to occasional gross manipulation in non-dominant arm could perform jobs requiring frequent reaching and handling, VE further testified that testimony consistent with DOT; court noted DOT does not specify a bilateral versus unilateral requirement for reaching and handling, and held that ALJ could reasonably have concluded that there is no conflict between hypothetical question and DOT); Mendoza v. Colvin, 2015 WL 4572321 at *2 (D. Nev. July 29, 2015)(court noted majority of district courts in 9th Circuit have held that a job description in the DOT does not conflict with a claimant's inability to fully reach with one arm or hand unless the description requires bilateral reaching).

The facts of this case are identical to those in Williams. The VE was informed that plaintiff was to engage in no frequent repetitive activity with the left upper extremity (R. at 64). He further testified that there would not be any erosion in the

occupations he identified due to the specific limitations given the VE by the ALJ, and that the jobs he identified were consistent with the DOT (R. at 66, 65).  Therefore, based on Segovia and Williams, the court finds no clear error by the ALJ in her findings at step five in regards to this issue.

Plaintiff also points out that the ALJ's RFC findings indicated that plaintiff "cannot perform work at a production pace, such as on an assembly line" (R. at 32).  The job of bottling-line attendant is alternatively listed as a line operator, and states that a person with this job pastes labels and tax stamps on filled whiskey bottles as bottles pass on conveyor (emphasis added).  1991 WL 687971.  Thus, the description of this job in the DOT does appear to conflict with the ALJ's finding that plaintiff cannot perform work at a production pace, such as on an assembly line.

Leaving out the job of bottling attendant, the ALJ identified two other jobs, of which 148,000 such jobs exist in the national economy (R. at 44, 65).  The statute and case law are clear that the Commissioner must show that the claimant can perform other kind of work that exists in significant numbers in the national economy.  See Raymond v. Astrue, 621 F. 3d 1269, 1274 (10th Cir. 2009).  The proper focus generally must be on jobs in the national, not regional, economy.  The Commissioner is not required to show that job opportunities exist within the

local area.  Raymond v. Astrue, 621 F.3d at 1274.  The question
for the court is whether, on the facts of this case, the ALJ's
error regarding the number of jobs that plaintiff can perform
given the RFC limitations established by the ALJ constitutes
harmless error.

Courts should apply the harmless error analysis cautiously
in the administrative review setting.  Fischer-Ross v. Barnhart,
431 F.3d 729, 733 (10th Cir. 2005).  However, it may be
appropriate to supply a missing dispositive finding under the
rubric of harmless error in the right exceptional circumstance
where, based on material the ALJ did at least consider (just not
properly), the court could confidently say that no reasonable
factfinder, following the correct analysis, could have resolved
the factual matter in any other way.  Fischer-Ross, 431 F.3d at
733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir.
2004).

In Quintana v. Colvin, Case No. 14-1134-SAC (Aug. 6, 2015)
the court reviewed cases in this circuit and district regarding
the issue of how many jobs constitutes a "significant number"
(Doc. 17 at 9-15).  The court noted that when the remaining
number of jobs nationally ranged from 152,000 to 215,000, the
ALJ was found to have committed harmless error, and only when
the remaining number of jobs nationally was much lower (59,000
jobs or less) was the case remanded for further hearing (Doc. 17

at 14).  On the facts of this case, the court finds that 148,000 jobs remaining in the national economy is a significant number of jobs; therefore, even if the ALJ erred by including the job of bottling attendant, the court finds such error to be harmless error.

## IV.  Are the ALJ's RFC findings supported by substantial evidence?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by

substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.
781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must
be sufficiently articulated so that it is capable of meaningful
review; the ALJ is charged with carefully considering all of the
relevant evidence and linking his findings to specific evidence.
Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,
2003).  It is insufficient for the ALJ to only generally discuss
the evidence, but fail to relate that evidence to his
conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49
F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to
comply with SSR 96-8p because he has not linked his RFC
determination with specific evidence in the record, the court
cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.  Such bare conclusions are beyond
meaningful judicial review.  Brown v. Commissioner of the Social
Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.
2003).

     The ALJ limited plaintiff to light work, with no overhead
reaching, no frequent repetitive activity with his left upper
extremity, simple, routine, repetitive work with minimal change
in assigned tasks, cannot perform work at a production pace,
such as an assembly line, no contact with public,[2] rare contact

---

[2] At the hearing, the hypothetical question posed to the VE stated "the work that is assigned to have contact with the public" (R. at 64).  However, this discrepancy was not mentioned by either party.

with co-workers, and contact with supervisors limited to beginning and end of shift and 1-3 times in between (R. at 32).

The court will first discuss the ALJ's RFC findings regarding plaintiff's mental limitations.  As set forth above, "the RFC assessment must include a narrative discussion describing how the evidence *supports each conclusion*, citing specific medical facts and nonmedical evidence." Wells v. Colvin, 727 F.3d 1061, 1065, 1069 (10th Cir. 2013)(emphasis in original at 1069).  The ALJ accorded little weight to the two assessments from Dr. Carolina (R. at 38-40), little weight to the opinions of James Reinerio, a social worker (R. at 40), and little weight to a state agency medical consultant, Dr. Fantz (R. at 41).  The ALJ stated that based on the treatment notes from Dr. Cannon, he found that plaintiff had moderate limitations with respect to social functioning and in concentration, persistence, or pace.  Then the ALJ, without explanation, stated that he accommodated these limitations in the assigned RFC (R. at 40-41).

According to SSR 96-8p:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator

must remember that the limitations
identified in the "paragraph B" and
"paragraph C" criteria are not an RFC
assessment but are used to rate the severity
of mental impairment(s) at steps 2 and 3 of
the sequential evaluation process. The
mental RFC assessment used at steps 4 and 5
of the sequential evaluation process
requires a more detailed assessment by
itemizing various functions contained in the
broad categories found in paragraphs B and C
of the adult mental disorders listings in
12.00 of the Listing of Impairments, and
summarized on the PRTF.

1996 WL 374184 at *4.  Thus, the PRTF form is used to determine

the severity of a mental impairment at steps 2 and 3 of the

sequential evaluation process, while a mental RFC assessment

form is used to determine a claimant's RFC at steps 4 and 5.

The ALJ made findings at step two in the four broad areas

(including findings of moderate limitations in social

functioning and moderate limitations in concentration,

persistence, or pace) (R. at 30-31, 41) which are only for the

purpose of rating the severity of a mental impairment at steps 2

and 3 of the sequential evaluation process.  These findings are

not an RFC assessment.  The mental RFC assessment used at steps

4 and 5 of the sequential evaluation process requires a more

detailed assessment.  However, the ALJ did not cite to any

evidence to indicate how her finding of plaintiff's moderate

limitations in two of the four broad areas translated into or

supported the more specific limitations she set out in

plaintiff's mental RFC.  The court has absolutely no idea why the ALJ included certain specific limitations in the areas of social functioning and concentration, persistence and pace, but not others.

First, as required by SSR 96-8p, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  However, the record is devoid of any identifiable discussion explaining how the evidence supported her specific mental RFC findings.

Second, the ALJ rejected all four opinions from medical sources or treatment providers regarding plaintiff's mental RFC. The ALJ did not cite to any medical opinion in support of her mental RFC findings.  However, an exact correspondence between a medical opinion and the RFC is not required.  In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file.  That said, in cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of a plaintiff's impairment(s) to the point of posing a serious challenge to the ALJ's RFC assessment, it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance.  Wells v. Colvin, 727 F.3d 1061, 1071-1072 (10th Cir. 2013) (in Wells, the ALJ rejected 3

medical opinions, finding that they were inconsistent with the other evidence in the file; the court directed the ALJ, on remand, to carefully reconsider whether to adopt the restrictions on plaintiff's RFC detailed in the medical opinions, or determine whether further medical evidence is needed on this issue).

In the case before the court, the ALJ gave little weight to all four mental RFC assessments prepared by treating sources and medical consultants, and provided no explanation for making the specific mental RFC findings contained in her decision.[3]  Such an explanation is required by SSR 96-8p, and the need for such an explanation is readily apparent given the ALJ's rejection of all the medical opinion evidence regarding plaintiff's mental RFC. For these reasons, the court finds that the ALJ has failed to provide substantial evidence in support of her mental RFC assessment.

The court will briefly address the failure of the ALJ in the second decision to recontact Dr. Carolina in order to clarify a conflict in her two opinions regarding plaintiff's mental limitations.  In the 1st Appeals Council decision

---

[3] In the case of <u>Vigil v. Colvin</u>, 805 F.3d 1199, 1203-1204 (10th Cir. 2015), the court held that the ALJ's finding of a moderate limitation in concentration, persistence and pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.  However, in <u>Vigil</u>, the court noted that the ALJ conducted a "more detailed" step four assessment of the claimant's RFC.  In the case before the court, the ALJ found plaintiff had moderate limitations in social functioning and in concentration, persistence, or pace, and then, without any explanation, stated that he had accommodated those limitations in the assigned RFC (R. at 40-41).  The ALJ provided no explanation and did not cite to any evidence in support of the specific mental RFC findings in the ALJ's decision.  The ALJ, unlike the case in <u>Vigil</u>, made no step four assessment.

remanding the case back to the ALJ, the Appeals Council noted
that Dr. Carolina's two opinions were not consistent with each
other (R. at 138-139).  Specifically, the 1st opinion by Dr.
Carolina, dated December 28, 2010, found only slight impairments
in 13 categories and 3 moderate impairments (R. at 549-551).
However, in her 2nd opinion, dated April 24, 2012, which was
submitted after the 1st ALJ decision, Dr. Carolina found 9
moderate and 10 extreme mental impairments, and further
indicated that these impairments began when she first saw the
plaintiff on July 26, 2010 (R. at 630-631).  Clearly, the two
opinions conflict.  The Appeals Council stated that:  "As
appropriate, the ALJ shall request the treating source to
provide additional evidence and/or further clarification of the
opinions and medical source statements about what the claimant
can still do despite the impairments" (R. at 139).

The ALJ, who held a hearing in May 2013, noted that Dr.
Carolina had not treated plaintiff after April 2012, and
therefore attempted to obtain a recent medical source statement
from Dr. Cannon or Dr. Skirchak, who had been treating plaintiff
on or after July 2012.  The ALJ indicated that he was unable to
obtain a statement from either of them (R. at 33).  The court
finds that the ALJ's attempt to obtain a medical source
statement from subsequent treatment providers was not a clear
violation of the decision of the 1st Appeals Council.  In fact,

the 2nd Appeals Council decision did not find that the ALJ had
violated their earlier order (R. at 6-7).  However, as this case
is being remanded, and in light of the clear conflict with the
two opinions offered by Dr. Carolina, the ALJ and/or plaintiff's
counsel should endeavor to contact Dr. Carolina and obtain an
explanation for the discrepancies in the two reports.

The court will next address the ALJ's RFC findings
regarding plaintiff's physical limitations.  The ALJ gave great
weight to the opinions of Dr. Siemsen (R. at 42).  Dr. Siemsen
affirmed an assessment prepared on July 12, 2010 (R. at 519,
111-118).  The assessment affirmed by Dr. Siemsen contained some
narrative discussion of the evidence (R. at 113, 114, 116, 118),
and the court finds no clear error in reliance on this opinion,
especially given the absence of any conflicting medical opinion
evidence.  However, the court is concerned with the fact that
the request for medical advice, dated November 3, 2010, just
prior to the analysis by Dr. Siemsen, discusses the evidence,
and then states:  "Please affirm initial RFC.  Thanks" (R. at
518).  On November 5, 2010, Dr. Siemsen stated that he reviewed
the evidence and affirmed the RFC assessment of July 12, 2010;
he offered no analysis of the evidence or rationale for his
opinion (R. at 519).  Plaintiff argues that this indicates that
Dr. Siemsen was merely following directions or was directed to

affirm the ALJ decision.  Defendant did not respond to this argument in their brief.

The court is concerned with language given a medical consultant asking them to affirm the RFC, as opposed to asking them to make an independent medical review of the assessment. Because this case is being remanded for other reasons, as set forth above, the court would ask that this issue be addressed.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 27th day of January 2016, Topeka, Kansas.


_____s/ Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge